IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LORETTA MARIE MAXIE, | § | |
| TDCJ #1240584, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-0937 |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

State inmate Loretta Marie Maxie (TDCJ #1240584) seeks a federal writ of habeas corpus under 28 U.S.C. §2254, to challenge her state court conviction. The respondent has answered with a motion for summary judgment, arguing that Maxie is not entitled to relief. (Doc. # 11). Maxie has not filed a response, and her time to do so has expired.[1] After considering all of the pleadings, the state court records, and the applicable law, this Court grants the respondent's motion and dismisses this case for reasons set forth below.

## I.   BACKGROUND

In 2004, a state grand jury returned an indictment against Maxie in cause number 975461, accusing her of aggravated sexual assault of a child. The victim in this case, was

---

[1]   According to this Court's local rules, responses to motions are due within twenty days, S.D. TEX. R. 7.3, unless the time is extended. Any failure to respond is taken as a representation of no opposition. S.D. TEX. R. 7.4.

Maxie's eleven-year-old daughter A.C.[2]  The State enhanced that indictment by alleging that

Maxie had at least two prior felony convictions.  A jury in the 232nd District Court of Harris

County, Texas, found Maxie guilty as charged.  After Maxie conceded that the enhancement

allegations were true, the same jury sentenced her to serve twenty-five years' imprisonment.

On direct appeal, Maxie argued that the evidence was legally and factually insufficient

to support her conviction and that she was denied effective assistance of counsel.  An

intermediate court of appeals rejected all of Maxie's arguments and affirmed the conviction

in an unpublished opinion after making the following findings based on the evidence

presented at trial:

> A.C. lived with her father, Anthony Carr, who had full legal custody of
> A.C. beginning in August, 2003, although he previously had joint custody with
> [Maxie], A.C.'s biological mother.  On the morning of January 13, 2004,
> eleven-year old A.C. went to school.  When Carr came home from work that
> day, A.C. was not at home, and Carr became worried.  He went to A.C.'s
> school and questioned teachers and students, but nobody could say whether
> A.C. had got on the bus.  He drove around the neighborhood looking for A.C.
> and returned to the school when he could not find her.  He talked to her teacher
> and her principal, who called some of A.C.'s friends, but no one had seen her.
> After driving around the neighborhood again, Carr went home and called the
> Harris County Sheriff's Office (HCSO).
>
> When HCSO deputies responded to Carr's call, Carr was instructed to
> call A.C.'s mother.  Carr called [Maxie], told her that A.C. was missing, and
> told her that the deputy wanted to speak to her.  Although [Maxie] did not
> want to speak with the deputy, Carr gave the phone to the deputy.  After the

---

[2]     Pursuant to a general order that applies to all cases in the Southern District of Texas, the
parties "shall refrain from including, or shall partially redact where inclusion is necessary,
. . . the names of minor children[.]"  *In the Matter of Protecting Personal Privacy in Public
Case Files*, Gen. Ord. No. 2004-11 (S.D. Tex. Oct. 18, 2004).  According to that general
order, "[i]f the involvement of a minor must be mentioned, only the initials of that child
should be used."  *Id.*  In compliance with General Order 2004-11, the Court will refer to the
victim only by her initials.

phone call, several deputies searched for A.C.  One deputy stayed at Carr's house; one went to the school; one drove around the neighborhood; one went to Carr's mother's house; and one went to [Maxie]'s house.  A.C. was not located during the search that occurred that night.

The next morning, A.C. was found at a fire station.  When Carr saw A.C. that morning, he observed that her clothes had been torn and her hair was a mess.  Deputy McNabb, a HCSO patrol officer, saw A.C. in the back of an ambulance and observed that A.C.'s hair was disheveled, her pants were torn, and she had a backpack.  A.C. told Deputy McNabb that while she was walking home from school, two white males in a purple van grabbed her and drove her around the neighborhood.  A.C. also told the deputy that there was a white girl in the van around seven years old and that the men drove her and the other girl around Channelview all night and finally drove them to a street off Leaden Hall.  A.C. also reported that one of the men was having sex with the other girl.  She said that the other man pulled her pants down and stuck his finger in her vagina.  She stated that the man then pulled down his own pants, put on a condom, and said, "We're going to get groovy."  At that point, A.C. said that she kicked him.  Then, both of the men got out of the van and went into a house.  A.C. said that she was able to escape from the van and run to a friend's house on Stevenage, where her friend's father called the police.  At the Wallisville substation, A.C. told HCSO Deputy Ackley a similar story about the two men.  A.C. described one man as having long white-blond hair and tattoos and the other as a fat, white man with straight, black hair.

Carr, his wife, and A.C. went to a room with Deputy Ackley to discuss A.C.'s account of what happened, because Carr did not believe A.C.'s story.  When Carr demanded that she tell the truth, A .C. said that the kidnapping story was a lie and that [Maxie], her mother, had actually taken her.

A.C. withdrew her account about the two men and related an assault by [Maxie].  A.C. stated that she was scared because she recently had got into trouble for changing her grades on her report card, knew her father was going to give her a whipping for it, and decided to call [Maxie].  [Maxie] and Tangela Rochelle picked A.C. up while she was on her way to her friend's house and took her to their house.  [Maxie] told A.C. that her father did not love her and only loved his stepchildren.  A.C. said that [Maxie] and Rochelle invented the story that A.C. had been abducted and raped.  [Maxie] and Rochelle explained to A.C. that her father would look like a bad parent and [Maxie] could regain custody of A.C. if they could show that an abduction happened in front of his house.  In an attempt to prove that A.C. was abducted, [Maxie] tore A.C.'s clothes and poured wine on her.  To have physical

evidence of a sexual assault, at Rochelle's suggestion, [Maxie] inserted her finger into A.C.'s female sexual organ. Rochelle then suggested that they hide A.C. in a garbage bag in the closet in case the police come looking for her. A.C. stayed in the closet until the next morning when [Maxie] gave her a condom and dropped her off on the other side of town. After A.C. related to Deputy Ackley what [Maxie] had done to her, her demeanor completely changed. Deputy Ackley described A.C. as still slightly scared but much calmer than she had been.

A.C. was taken for a medical examination at the Children's Assessment Center. Dr. Lahoti, a physician who specializes in evaluating children who possibly have been sexually abused, examined A.C. Although she did not find any physical evidence of sexual assault, Dr. Lahoti explained that she would not expect to find physical evidence from digital penetration of the female sexual organ. A.C. told Dr. Lahoti that her "mama had said act like somebody had raped me and she said she'd stick her fingers up me that's why I'm here." When Dr. Lahoti asked if her mother had actually done so and if it hurt, A.C. nodded yes.

At trial, A.C. testified that [Maxie] took her to the apartment that [Maxie] shared with Rochelle, and that [Maxie] tore her clothes, poured alcohol on her, and digitally penetrated her sexual organ, causing her pain. A.C. also related that [Maxie] put her in the closet in a trash bag on a shelf. A.C. heard police officers come by the apartment that night but could not see them because she was in the closet. A.C. stated that [Maxie] dropped A.C. off at A.C.'s friend's house the next morning, and gave her a condom, instructing her to say that the men who abducted her left the condom behind. A.C. testified that [Maxie] fabricated the story about the two men who took her. At her friend's house, A.C. asked her friend's father to call the police. A.C. reported that when she told the police the story as [Maxie] had instructed, she was uncomfortable because she "knew that it didn't really happen." She felt better when she told the truth.

The State also presented the testimony of Sarah Holt, a person who lives on the same street as Carr. She testified that between 3:45 and 4:00 p.m. on January 13, she saw a green Ford Taurus parked in Carr's driveway. The State also presented the testimony of Deputy Ackley, who testified that when he went to [Maxie]'s apartment, he did not go inside or take pictures.

[Maxie]'s defensive theory at trial was that A.C. lacked credibility and had fabricated the claims against her. Rochelle, [Maxie], and [Maxie]'s son, Dennis Maxie, who was 15 years of age, each testified that A.C. was not at

4

[Maxie]'s house on January 13, as A.C. claimed.  They also testified that they
learned of A.C.'s disappearance when Carr called around 6:00 p.m. on January
13.  They stated further that the police came and searched the apartment that
night but did not find A.C. because she was not there.  After the police left,
[Maxie] and Rochelle went to A.C.'s grandmother's house to look for A.C.
Rochelle admitted that she had a prior criminal record.  Rochelle, [Maxie], and
Carr each testified that A.C. often told lies.  [Maxie] acknowledged that she
was previously convicted of four felonies, that she drove a "money green"
Ford Taurus, and that she had been in a lesbian relationship with Rochelle.

*Maxie v. State*, No. 01-04-00524-CR, 2005 WL 2850228, at *1–*3 (Tex. App. — Houston

[1st Dist.] Oct. 27, 2005).  Thereafter, the Texas Court of Criminal Appeals refused Maxie's

petition for discretionary review.

Maxie challenged her conviction further by filing an application for a writ of habeas

corpus under Article 11.07 of the Texas Code of Criminal Procedure.  In that application,

Maxie argued that the evidence was insufficient to support her conviction and that her trial

counsel was ineffective.  Maxie also complained that the police conducted an inadequate

investigation.  The state habeas corpus court, which also presided over Maxie's trial, entered

findings of fact and concluded that Maxie was not entitled to relief after considering an

affidavit from Maxie's trial attorney.  The Texas Court of Criminal Appeals agreed and

denied relief, without a written order, based on findings made by the trial-level state habeas

court.  *See Ex parte Maxie*, No. 67,134-01 (Tex. Crim. App. March 28, 2007).

While her initial state habeas proceeding was pending, Maxie filed a second

application for relief under Article 11.07.  In that application, Maxie raised additional

allegations of ineffective assistance of counsel and error on the trial court's part.  The state

habeas corpus court considered a second affidavit from Maxie's trial counsel and concluded,

5

once again, that Maxie was not entitled to relief.  The Texas Court of Criminal Appeals denied this application as well, without a written order, based on the trial court's findings. *See Ex parte Maxie*, No. 67,134-02 (Tex. Crim. App. Oct. 31, 2007).

Maxie now seeks a federal writ of habeas corpus to challenge her conviction under 28 U.S.C. § 2254.  In this petition, which is accompanied by a handwritten narrative account of her claims, Maxie contends that she is entitled to relief for the following reasons: (1) the evidence was insufficient to support her conviction; (2) she was denied effective assistance of counsel at trial; and (3) law enforcement conducted an inadequate investigation in her case.  (Doc. # 1).  The respondent notes that Maxie failed to raise several of the factual theories and legal arguments in state court and that some of her ineffective-assistance claims are barred by the doctrine of procedural default.  The respondent argues further that, with respect to those claims that were raised properly and rejected by the state courts, Maxie is not entitled to relief under the federal habeas corpus standard of review.  The parties' contentions are addressed below under the applicable legal standard.

## II.    STANDARD OF REVIEW

Federal review of the pending habeas corpus petition is subject to the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding that the AEDPA applies to those habeas corpus petitions filed after its effective date of April 24, 1996).  Embodying the principles of federalism, comity, and finality of judgments, the AEDPA "substantially restricts the scope of federal review of state criminal court proceedings."  *Montoya v.*

*Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Specifically, the federal habeas corpus statutes amended by the AEDPA, codified at 28 U.S.C. § 2254(d), set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted).

The federal habeas corpus statutes require applicants for relief to first present their claims in state court and to exhaust all state court remedies through proper adjudication.  *See* 28 U.S.C. § 2254(b).  To the extent that the petitioner's claims were adjudicated on the merits in state court, the AEDPA standard applies.  If a claim has not been adjudicated on the merits in state court, federal review is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995).  The procedural default rule also prevents habeas review when a petitioner has failed to meet state procedural requirements for presenting his federal claims, thereby depriving the state courts of an opportunity to address those claims in the first instance.  *See Coleman*, 501 U.S. at 730; *Rosales v. Dretke*, 444 F.3d 703, 707 (5th Cir. 2006) (noting that the procedural default rule prevents habeas petitions from avoiding the exhaustion requirement by defaulting their federal claims in state court).

For claims adjudicated on the merits, the AEDPA provides that a petitioner is not entitled to relief unless the state court's ultimate decision:

> (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (observing that the AEDPA standard is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning") (citation omitted). The burden is on the petitioner to show that she is entitled to relief under the highly deferential AEDPA framework. *See DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002).

  Claims presenting pure questions of law and mixed questions of law and fact are governed by § 2254(d)(1). *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). The Supreme Court has clarified that "clearly established Federal law" or precedent for purposes of § 2254(d)(1) "refers to the holdings, as opposed to the dicta," of decisions from the United States Supreme Court "as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 653 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A state court decision is "contrary to" clearly established precedent if the state court arrives at a conclusion opposite to one reached by the Supreme Court on a question of law or if the state court decides a case differently from the Supreme Court "on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable application" of clearly established precedent if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Id.*

Pure questions of fact are governed by § 2254(d)(2).  *See Martin*, 246 F.3d at 475.

In addition, a state court's factual findings are entitled to deference on federal habeas corpus

review and are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts

those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441,

444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28

U.S.C. § 2254(e)(1)).  This deference extends not only to express findings of fact, but to the

implicit findings of the state court as well.  *Garcia*, 454 F.3d at 444-45 (citing *Summers v.

Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir.

2004)).

## III.   DISCUSSION

### A.   Sufficiency of the Evidence

Maxie maintains that the evidence is legally insufficient to support her conviction.

A federal habeas corpus court reviews the evidentiary sufficiency of a state court conviction

under the legal standard found in *Jackson v. Virginia*, 443 U.S. 307 (1979).  This standard

requires only that a reviewing court determine "whether, after viewing the evidence in the

light most favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt."  *Id.* at 319.  In conducting that

review, a federal habeas corpus court may not substitute its view of the evidence for that of

the fact finder, but must consider all of the evidence in the light most favorable to the verdict.

*See Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995).  "Where a state appellate court has

9

conducted a thoughtful review of the evidence, moreover, its determination is entitled to great deference." *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993) (citation omitted).

Maxie was convicted of aggravated sexual assault in violation of § 22.021(a) of the Texas Penal Code. Under Texas law, a person commits aggravated sexual assault if he or she intentionally or knowingly causes the penetration of the sexual organ of a child by any means and the victim is younger than fourteen years of age. *See* TEX. PENAL CODE §§ 22.021(a)(1)(B), 22.021(a)(2)(B). In light of the testimony presented at trial, which is detailed above, the state court of appeals found that the evidence was more than sufficient to support the conviction as a matter of fact and as a matter of law:

> [Maxie] contends that the evidence is legally and factually insufficient to sustain her conviction because (1) the complainant, A.C., lied to everyone she spoke with concerning the case; (2) no medical evidence indicated that A.C. was sexually assaulted; (3) the police did not find A.C. at [Maxie]'s apartment after searching it on the night of her disappearance; and (4) three witnesses stated that A.C. was not at the apartment that night.

> In a legal sufficiency review, we view all of the evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to give their testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). A jury is entitled to accept one version of the facts and reject another, or reject any part of a witness's testimony. *Id.*

> In a factual sufficiency review, we view all of the evidence in a neutral light, and we will set aside the verdict only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004), *cert. denied*, — U.S. —, 125 S. Ct. 1697, 161 L.Ed.2d 528 (2005). In a factual sufficiency review, we may not substitute our own judgment for that of the factfinder. *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). In

conducting a factual sufficiency review, we must consider the evidence that the [Maxie] contends most undermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). Unless the available record clearly reveals that a different result is appropriate, we defer to the jury's determination concerning the weight to place upon conflicting testimony, because resolution of facts often turns on evaluation of credibility and demeanor. *Johnson v. State*, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000).

To establish the offense of aggravated assault of a child, as alleged here, the State must prove that [Maxie] intentionally or knowingly caused the penetration of the sexual organ of a child by any means, and the victim was younger than 14 years of age. TEX. PEN. CODE ANN. §§ 22.021(a)(1)(A)(i), 22.021(a)(2)(B) (Vernon Supp.2004-2005).

[Maxie] contends the testimony of A.C. lacks credibility because A.C. initially told the police that she was abducted by two white men, and because several testifying witnesses, including her father, admitted that A.C. had lied in the past. Although the record undisputedly shows that A.C. initially told a different story and that she had lied about other things in the past, the record further shows that A.C. testified at trial that [Maxie] sexually assaulted her. This testimony was consistent with the statements she made to Carr and Deputy Ackley. Moreover, circumstantial evidence supports A.C.'s claims about [Maxie] because the record shows that her clothes were torn, a green car was seen parked near her house on the afternoon that she disappeared, [Maxie] drove a green car, and A.C. was missing from her father's house all night long. [Maxie] essentially asks that we conclude that A.C. is not credible, even though the jury necessarily found her credible by convicting [Maxie]. As an appellate court, we must defer to the jury as the sole judge of a witness's credibility. *See Penagraph*, 623 S.W.2d at 343. The jurors were entitled to believe or disbelieve A.C.'s testimony and to give it the weight and credibility that they felt it deserved. *See Johnson*, 23 S.W.3d at 8.

[Maxie] further contends that the absence of medical findings makes the evidence insufficient. However, there is no requirement that a victim's testimony of penetration be corroborated by medical testimony or other physical evidence. *See Jensen v. State*, 66 S.W.3d 528, 534 (Tex. App. — Houston [14th Dist.] 2002, pet. ref'd) (stating that testimony alone of child complainant is sufficient to support conviction of sexual assault); *Ruiz v. State*, 891 S.W.2d 302, 304 (Tex. App. — San Antonio 1994, pet. ref'd). Moreover, the record here shows that although no physical evidence shows that a sexual assault occurred, the examining physician also explained that she would not expect physical evidence when the assault was by digital

11

penetration of the female sexual organ. *See id.* (holding evidence sufficient to find defendant guilty of aggravated kidnapping inclusive of sexual assault even though State did not take fingerprints, blood, or semen samples).

[Maxie] also contends that the evidence is insufficient to support [Maxie]'s conviction because three witnesses, [Maxie], her son, and Rochelle, all testified that A.C. was not at the apartment on the night she disappeared from her home. Reconciliation of conflicting testimony is within the exclusive province of the jury. *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995). The jury was within its discretion to find not credible [Maxie] and her girlfriend, who both had criminal records, and [Maxie]'s son, who may have been biased because of his relationship with [Maxie]. We must defer to the jury's credibility determination of the witnesses under these circumstances. *See Johnson*, 23 S.W.3d at 8.

[Maxie] also contends that the evidence is insufficient because the police made no effort to verify many of the details of the offense. Specifically, [Maxie] contends that the evidence is insufficient because (1) the police did not find A.C. in [Maxie]'s apartment when it was searched, (2) Deputy Ackley did not interview the first outcry witness, the father of A.C.'s friend, and did not go to the location, (3) Deputy Ackley did not confirm that there was a closet with a shelf where the crime could have occurred in [Maxie]'s apartment, (4) Deputy Ackley relied exclusively on A.C.'s word, and (5) the deputy who searched [Maxie]'s house did not testify and no written report described exactly what portion of the apartment was searched. We must defer to the jury's determination of how heavily to weigh the evidence. *Penagraph*, 623 S.W.2d at 343. The jury acted within the bounds of its discretion in determining from the evidence presented at trial that A.C. was well-hidden in the closet and outside the view of the officer who searched [Maxie]'s house, and that A.C.'s testimony was sufficient evidence to establish the aggravated sexual assault.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of the aggravated sexual assault of a child beyond a reasonable doubt and therefore hold that the evidence is legally sufficient to sustain [Maxie]'s conviction. *See King*, 29 S.W.3d at 562. Additionally, viewing all of the evidence in a neutral light, we conclude that the evidence is not so weak that the verdict is clearly wrong and manifestly unjust, and the contrary evidence is not so strong that the standard of proof beyond a reasonable doubt could not have been met, and therefore hold that the evidence is factually sufficient to support [Maxie]'s conviction. *See Escamilla*, 143 S.W.3d at 817.

*Maxie v. State*, No. 01-04-00524-CR, 2005 WL 2850228, at *3–*5 (Tex. App. — Houston [1st Dist.] Oct. 27, 2005, pet. ref'd).

In this instance, Maxie presents essentially the same arguments on federal habeas corpus review that were rejected by the state court of appeals.  As in state court, Maxie complains primarily that the complainant's testimony was untruthful and not worthy of belief.  These claims turn on credibility findings made by the jury and the weight of the evidence.

To the extent that Maxie challenges the credibility of the State's witnesses against her, an assessment of witness credibility is "beyond the scope of review" permitted in a legal-sufficiency analysis.  *Schlup v. Delo*, 513 U.S. 298, 330 (1995) (discussing the standard for challenges to the legal sufficiency of the evidence under *Jackson v. Virginia*, 443 U.S. 307 (1979)).  It bears repeating that the evidence is sufficient under the *Jackson* standard, if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  Under this standard, "[a]ll credibility choices and conflicting inferences are to be resolved in favor of the verdict."  *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

Based on its own review of the record, this Court concludes that a rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt.  Thus, Maxie fails to show that her conviction was supported by insufficient evidence or that the state court's decision was contrary to the *Jackson v. Virginia* standard.  Likewise, she has not shown that the state court's decision was based on an unreasonable determination of the

facts in light of the evidence presented in the state court proceedings.  Because Maxie fails to show that she is entitled to federal habeas corpus relief, the respondent is entitled to summary judgment on this claim.

### B.    Ineffective Assistance of Counsel

Maxie contends that she is entitled to relief under 28 U.S.C. § 2254(d) because she was denied her constitutional right to effective assistance of counsel at trial.  Maxie raised several allegations of ineffective assistance of counsel during her direct appeal and on state habeas corpus review.  At every level, the state courts rejected her claims and concluded that she was not denied her right to have the effective assistance of counsel.  Because ineffective assistance of counsel presents a mixed question of law and fact, Maxie must demonstrate that the state court's decision was contrary to or involved an unreasonable application of "clearly established Federal law" in order to prevail.  *See* 28 U.S.C. § 2254(d)(1); *Virgil v. Dretke*, 446 F.3d 598, 604 (5th Cir. 2006).

The Supreme Court has recognized that the Sixth Amendment guarantees criminal defendants the effective assistance of counsel at trial.  *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  To establish ineffective assistance of counsel in violation of the Sixth Amendment, a defendant must satisfy the two-prong test established by *Strickland v. Washington*, 466 U.S. 668 (1984) by demonstrating both of the following: (1) that his counsel's performance was deficient; and (2) that the deficiency prejudiced his defense. Failure to prove either prong of the *Strickland* test will defeat an ineffective-assistance claim.

*See Leal v. Dretke*, 428 F.3d 543, 548 (5th Cir. 2005) (citing *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998)).

To establish deficient performance, the petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Riley v. Dretke*, 362 F.3d 302, 305 (5th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689).  Performance is prejudicial only if, but for counsel's errors, there is a reasonable probability that the final result would have been different and confidence in the reliability of the verdict has been undermined. *See Leal*, 428 F.3d at 548 (citing *Little v. Johnson*, 162 F.3d 855, 860-61 (5th Cir. 1998)).

In her federal petition, Maxie raises several related claims that take issue with her trial attorney's investigation.  Maxie alleges that her attorney was deficient, and that she was prejudiced as a result, for the following shortcomings:

1.  Counsel did not investigate her alibi by getting security videotapes from a bank, grocery store, and a discount store that would have established her whereabouts at the time A.C. was allegedly abducted.

2.  Counsel did not visit Maxie's apartment, where the offense was supposed to have taken place.

3.  Counsel did not interview "potential friend[s] or family" members who may have seen A.C. on the day in question.

> Likewise, counsel did not interview or call the deputy who searched her apartment (Deputy Womack) as a witness.

> 4.      Counsel did not retrieve phone records showing that, contrary to A.C.'s testimony, A.C. did not call her.

(Doc. # 1, *Petition*, unnumbered pages).  Maxie complains further that her trial attorney failed to raise certain objections or that he erred by introducing or allowing prejudicial evidence:

> 1.      Counsel did not object to "prosecutorial overreaching" in the form of a remark by the prosecutor, during opening statements, that the police had conducted a "thorough" investigation.

> 2.      Counsel did not defend against attacks on her "character as a mother" by the victim's father, Anthony Carr, who testified that A.C. tended to lie after she had been around Maxie.

> 3.      Counsel introduced her prior felony convictions without seeking a limiting instruction.

> 4.      Counsel opened the door to additional testimony from the "second outcry witness," identified as Deputy Ackley, who "went outside [the] scope for outcry."

(*See id.*).[3]  Maxie's ineffective-assistance allegation concerning the introduction of her prior felony convictions was rejected on direct appeal.  The state court found that Maxie's attorney did not introduce any prior conviction that was inadmissible under the Texas Rules of Evidence and noted further that the jury charge included a limiting instruction regarding prior

---

[3]      Maxie's federal petition raises several other allegations of ineffective-assistance that were not presented to the state courts.  These claims are barred by the doctrine of procedural default for reasons addressed briefly below.

convictions.[4]  *See Maxie v. State*, No. 01-04-00524-CR, 2005 WL 2850228, at *5–*6 (Tex. App. — Houston [1st Dist.] Oct. 27, 2005, pet. ref'd).  The state court concluded, therefore, that Maxie's counsel was not deficient.

Maxie's ineffective-assistance claims were also raised and rejected on state habeas corpus review, where Maxie's trial attorney, John Petruzzi, provided an affidavit in response to her allegations of deficient performance.  The state habeas corpus court found that the facts asserted in Petruzzi's affidavit were "true" and that the affidavit was "credible."  *Ex parte Maxie*, No. 67,134-01 at 45.  Based on that affidavit, the state court rejected all of Maxie's claims.  The state court's findings are summarized briefly below.

The state court rejected Maxie's claim that Petruzzi failed to conduct a proper investigation or interview witnesses, finding that Petruzzi "thoroughly investigated [Maxie]'s case, including reviewing the prosecution's file, interviewing [Maxie], and hiring an investigator who interviewed witnesses."  *Id.* at 45-46.  The state court found that Petruzzi and his investigator were "unaware of any videotape of [Maxie] on the day of the incident" and were "unaware of any phone records" belonging to Maxie.  *Id.* at 46.  The state court also found that Petruzzi did not become aware of Deputy Womack's participation in the search of her apartment, or any other deputy who participated in the search, until the trial.

---

[4]     The record reflects that Maxie had at least four prior convictions for drug-related offenses, including felony convictions for possession of cocaine in cause number 636100 (338th Dist. Ct. Harris County, Tex.) (resulting in an eighteen year prison sentence in 1992); delivery of cocaine in cause numbers 573590 and 573591 (208th Dist. Ct. Harris County, Tex.) (resulting in nine-year prison sentences in 1990); and possession of cocaine in cause number 536355 (177th Dist. Ct. Harris County, Tex.) (resulting in a three year prison sentence in 1989).  *See* Court Reporter's Record, State's Exhibits 3-5.

*Id.* In addition, the state court found that Petruzzi brought out Maxie's prior felony convictions on direct examination "to attempt to lessen the blow and diminish the impact of the information" and that he did not file a motion to exclude those prior convictions because "counsel reasonably believed that such a motion would not be granted." *Id.*

With regard to Maxie's claims that her counsel was deficient for failing to defend her character against untrue attacks, Petruzzi explained that he did not object to testimony by Mr. Carr concerning A.C.'s "propensity for lying as it was part of my trial strategy to attack the victim's credibility." *Ex parte Maxie*, No. 67,134-01 at 41. The state court rejected this claim and also rejected Maxie's contention that her counsel was deficient for failing to object to a comment by the prosecutor about the adequacy of the investigation, finding that "Petruzzi did attack the investigation conducted" by police in Maxie's case "and argued that the investigation was insufficient." *Id.* at 46. In rejecting these allegations, the state court concluded that Maxie failed to overcome the presumption that trial counsel's "decision not to object was made in the exercise of reasonable professional judgment" and that she failed to meet her burden to show that her attorney was ineffective for failing to object. *Id.* at 47. The state court added, in addressing Maxie's second state habeas application, that trial counsel made a "strategic decision" to question Deputy Ackley as he did, opening the door to outcry evidence, because he "sought to attack the complainant's credibility by establishing inconsistencies between her trial testimony and prior statements." *Ex parte Maxie*, No. 67,134-02 at 30.

18

After rejecting all of Maxie's allegations, the state habeas corpus court concluded that she failed to show that her counsel's performance fell below "an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different." *Ex parte Maxie*, No. 67,134-01 at 47 (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (citations omitted)). The state court concluded, therefore, that the totality of representation that Maxie received "was sufficient to protect her right to reasonably effective assistance of counsel" in her case. *Id.*; *see also Ex parte Maxie*, No. 67,134-02 at 30 (reaching the same result on Maxie's second state habeas application).

The factual findings made by the state habeas corpus court, which also presided over Maxie's trial, are entitled to the presumption of correctness found at 28 U.S.C. § 2254(e)(1). Maxie, who has not filed a response to the summary judgment motion, has not met her burden to rebut the presumption of correctness found in 28 U.S.C. § 2254(e)(1) with clear and convincing evidence. Accordingly, the state court's fact findings are presumed to be true and correct.

A review of the record supports the state habeas court's ultimate conclusion that Petruzzi was not ineffective. Maxie presents only conclusory allegations in support of her claims. Conclusory assertions of this kind are not sufficient to make an ineffective-assistance claim on collateral review and do not merit federal habeas corpus relief. *See, e.g.*, *Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002) ("This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal

habeas proceeding.") (citing *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (holding that the petitioner's conclusory allegations failed to establish a valid ineffective assistance of counsel claim).

Absent a showing that her attorney was deficient, or that she was actually prejudiced as a result, Maxie fails to establish a valid claim for ineffective assistance of counsel. Accordingly, Maxie fails to show that the state court's decision to deny her claim was contrary to, or involved an unreasonable application, of clearly established Supreme Court precedent. As a result, Maxie is not entitled to federal habeas corpus relief.

## C.      Remaining Ineffective-Assistance Claims — Procedural Default

In addition to the ineffective-assistance claims referenced above, which were raised and rejected in state court, Maxie embellishes several of her allegations regarding her counsel's alleged deficient performance. In addition to the ineffective-assistance allegations listed above, Maxie asserts that her counsel was deficient for failing to do the following:

1.      Counsel did not present evidence showing that A.C.'s father, Anthony Carr, was biased against her and that he lied under oath.

2.      Counsel did not present evidence showing that, contrary to A.C.'s testimony, the apartment had no closet shelf that could have supported A.C.'s weight.

3.      Counsel did not take pictures of Maxie's car to show that it was not the one seen at Anthony Carr's house the day A.C. disappeared.

(Doc. # 1, *Petition*, unnumbered pages).   Because Maxie did not present these allegations in state court, the respondent argues that these claims are unexhausted and barred by the doctrine of procedural default.   The Court addresses these issues below, beginning with the exhaustion doctrine.

### 1.   The Exhaustion Doctrine

The federal habeas corpus statutes, codified as amended at 28 U.S.C. § 2254(b) and (c), provide that relief "shall not be granted" unless the applicant "has exhausted the remedies available in the courts of the State[.]"   Thus, a petitioner "must exhaust all available state remedies before he may obtain federal habeas corpus relief."   *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir. 1995).   Exceptions exist only where there is an absence of available State corrective process or circumstances exist that render such process ineffective to protect the rights of the applicant.   28 U.S.C. § 2254(b).   The doctrine of exhaustion reflects a policy of federal/state comity.   *See Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991).

The exhaustion requirement is not met where the petitioner presents new legal theories or factual claims in his federal habeas petition.   *See Finley v. Johnson*, 243 F.3d 215, 219 (5th Cir. 2001) (citing *Anderson v. Harless*, 459 U.S. 4, 6-7 (1982)).   In that respect, "the policies of comity and federalism underlying the exhaustion doctrine" require that "new factual allegations in support of a previously asserted legal theory" be first presented to the state court.   *Joyner v. King*, 786 F.2d 1317, 1320 (5th Cir. 1986); *see also Graham v. Johnson*, 94 F.3d 958, 968-69 (5th Cir. 1996).   Importantly, the Fifth Circuit has recognized that where a petitioner lodges multiple claims for ineffective assistance of counsel each

21

distinct allegation of ineffective assistance must be exhausted. *See Jones v. Jones*, 163 F.3d 285, 296-98 (5th Cir. 1998).

A liberal reading of the state court record confirms that Maxie did not present the above-referenced allegations on direct appeal or state habeas review. *See Ex parte Maxie*, No. 67,134-01 at 7, 16-18; *Ex parte Maxie*, No. 67,134-02 at 7. Accordingly, Maxie did not exhaust her state court remedies with respect to these claims. The respondent argues that the unexhausted allegations are barred from federal habeas corpus review by the doctrine of procedural default.

## 2. The Doctrine of Procedural Default

It is well established that "[i]f a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claim procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief." *Finley*, 243 F.3d at 220 (citing *Coleman*, 501 U.S. at 735 n.1, and *Sones*, 61 F.3d at 416). Article 11.07, § 4 of the Texas Code of Criminal Procedure prohibits a Texas court from considering a successive habeas corpus application on the merits unless the petition satisfies one of the following exceptions:

(1)    the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or

(2)    by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.

TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4(a).  Maxie does not show that she fits within either exception.  Because Texas would bar another habeas corpus application by the petitioner at this late date, this default represents an adequate state procedural ground which, in turn, bars federal review of her claims.  *See Busby v. Dretke*, 359 F.3d 708, 724 (5th Cir. 2004) (citing *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) (citation omitted)).

"In all cases in which a state prisoner has defaulted [her] federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  "This doctrine ensures that federal courts give proper respect to state procedural rules."  *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *see also Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (explaining that the cause and prejudice standard is "grounded in concerns of comity and federalism"); *Coleman*, 501 U.S. at 750 (recognizing "the important interest in finality served by state procedural rules, and the significant harm to the States that results from the failure of federal courts to respect them").

Maxie, who has not filed a response to the summary judgment motion, does not dispute that she failed to exhaust all of her ineffective-assistance claims by raising them before the state courts.  She makes no effort to show that her default is excused by cause and actual prejudice.  She does not otherwise show that she is actually innocent or that the

fundamental miscarriage of justice exception somehow applies in this case.[5]  Therefore, the Court concludes that Maxie's unexhausted ineffective-assistance claims are barred from federal habeas corpus review by the doctrine of procedural default.  The respondent's motion for summary judgment on this issue is granted.

### D.      Inadequate Investigation

Maxie argues that she is entitled to relief from her conviction under the federal habeas corpus statutes because law enforcement officers conducted a flawed investigation.  Maxie appears to claim that law enforcement personnel had a duty to investigate and uncover exculpatory evidence, but failed to do so, depriving her of a fair trial.  The respondent argues that, while police may not suppress exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), Maxie fails to establish that law enforcement officers have an affirmative duty to develop evidence to support an accused's defense.  The respondent argues, therefore, that her allegations do not demonstrate a constitutional violation of the sort that is actionable on federal habeas corpus review.

---

[5]      The fundamental-miscarriage-of-justice exception to the doctrine of procedural default is limited to cases where the petitioner can make a persuasive showing that she is actually innocent of the charges against her.  *See Coleman*, 501 U.S. at 750; *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995). To make this showing the petitioner must prove that, as a factual matter, she did not commit the crime for which she was convicted.  *See Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000) (citing *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999)).  "To establish the requisite probability that [she] was actually innocent, the petitioner must support his allegations with new, reliable evidence that was not presented at trial and show that it was 'more likely than not that no reasonable juror would have convicted [her] in the light of the new evidence.'" *Finley v. Johnson*, 243 F.3d 215, 221 (5th Cir. 2000) (quoting *Fairman*, 188 F.3d at 644) (quoting *Schlup v. Delo*, 513 U.S. 298 (1995)).

It is well established that the federal writ of habeas corpus "shall not" issue unless a prisoner shows that she is in custody in violation of the Constitution or laws of the United States.  28 U.S.C. §§ 2241(c); 2254(a).  Maxie does not cite any authority or articulate sufficient facts establishing a constitutional violation on the part of law enforcement during the conduct of the investigation.[6]  Although Maxie proceeds *pro se*, she is still required to provide sufficient facts in support of his claim for relief.  *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993).  Even under the rule of liberal construction, mere conclusory allegations "are insufficient to raise a constitutional issue."  *Id.* (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value.").  Absent a showing that law enforcement officers violated her constitutional rights, the respondent is entitled to summary judgment on this issue.  Because Maxie has failed to show that she is entitled to federal habeas corpus relief under the governing standard of review, her petition must be dismissed.

## IV.    CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act, codified as amended at 28 U.S.C. § 2253, a certificate of

---

[6]    To the extent that Maxie invokes a rule not recognized previously by the Supreme Court, *Teague v. Lane*, 489 U.S. 288 (1989) bars relief on collateral review.  She likewise fails to show that the state court's decision to deny relief was contrary to, or involved an unreasonable application of, clearly established precedent.  *See* 28 U.S.C. § 2254(d).

appealability is required before an appeal may proceed.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).  "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336.  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

For all of the reasons discussed above, this Court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner stated a valid claim of the denial of a constitutional right.  Because the issues presented do not deserve encouragement to proceed further, a certificate of appealability will not issue.

## V.  CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.  The respondent's motion for summary judgment (Doc. # 11) is **GRANTED**.

2.  The federal habeas corpus petition is **DENIED** and this case is **DISMISSED** with prejudice.

3.  A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas, on August 29th , 2008.

Nancy F. Atlas
United States District Judge